Good afternoon. Lindsay Sweet for the petitioner appellant Kyle Frank and I would like to reserve two minutes for rebuttal please. It was in 1979 or 1980 that juror number nine was shot in the foot by a burglar in his parents home. He was a teenager. Fast forward 30 years later to Mr. Frank's trial in 2011 and juror number nine did not include that experience on his juror questionnaire. However during the voir dire proceedings he did volunteer a correction and it's really important I think the words that he used when he did so. He didn't say my parents were victims of a burglary period. He said I was witness to the burglary of my parents home. So he placed himself there at the scene and it was more than sufficient to allow to alert the court or counsel of the need for follow-up if they were concerned with what had happened. But he didn't indicate that he'd been shot. He did not indicate that he had been shot. Hardly something one would forget I would think. I would not forget that. It had been 30 years. I don't think you know when he volunteers that the incident occurred I don't think that shows intentional concealment in any way. I think that's under 2254 D2. I think that's an unreasonable determination of the facts. Well your case is complicated because it's under AEDPA. I mean if it were straight Ninth Circuit authority we'd have Symington and some other issues but how can we say without a precise Supreme Court case on point that we have a constitutional violation here? Well the constitutional violation I think does exist under circuit authority but of course to clear the AEDPA hurdle I do think there was an unreasonable determination of the facts in this case which would clear that hurdle. And I do think there's clearly established Supreme Court precedent including but not limited to McDonough versus Greenwood. That case of course gave us a test for implied bias based on concealment of information. I realize it's a civil case. Yes it is a civil case. The issue there the right at issue was the right to an impartial jury of the defendant. Sixth Amendment right. A fundamental right. The Supreme Court has told us that that right includes the right to be free from judicial coercion. It has spoken clearly on that. I would reference Jenkins versus United States 1965. The court said the principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration. One thing I think that's important about this right is it's not it's not a broad general right. It can't be violated in innumerable ways. There aren't a bunch of different applications. I'm kind of having a hard time equating not indicating that you've been shot in the foot with some right that you don't want to give up. I mean what what is his closely held right that he didn't want to tell anybody that he was shot in the foot? I don't I'm not sure I understand the question. I don't know about a closely held right to the juror. Juror number nine. Yeah. What what is I mean you're talking about closely held beliefs that he's not supposed to give up. Right. Well what I was speaking on there was I think there's two ways that a judge could coerce a jury in. But how was the judge coercing the jury here? I mean this is where I'm having a hard time. Well I think the judge's concern was that this is a juror who didn't disclose in a in a criminal case that he had been the serious victim of a crime and had been shot. And and then when he gave his kind of amended answer so to speak he still didn't disclose that he'd been shot. And I think the court was concerned about that. That's true. He still did not disclose that he'd been shot. He he knew he was going to be asked follow up questions when he disclosed. And in fact he was asked questions. He answered them all truthfully. I believe that's not in dispute at all. Yeah by the way were you shot during that. I mean it's not a normal question that I mean you would think somebody would suggest that if that had happened. You would think yes. But I think the Supreme Court has been clear that that is not the burden on a juror. The burden is to be honest and truthful. The burden is not to be 100 percent accurate or inclusive. They're not lawyers. They're not prepared as witnesses are even. I think that that's what the Supreme Court was speaking to in McDonough. But the flip side of that argument is which we see from in criminal cases from time to time is that you have a juror who doesn't disclose something and then it turns out he's biased against the defendant and that was not disclosed during four deer. And we say well that's that's depriving the defendant of a fair trial. So that's the flip side of your argument. But in the end the question is did the did the trial court have good cause to remove him. And the only thing that would place that into question at all is the fact that he was allegedly the holdout juror. That's the that's the complicating factor here. That is a complicating factor. It's a very important factor. Otherwise we wouldn't be here of course. As to the trial court's findings though, I think that the trial court here was really concerned with the loss of the prosecution's right to peremptory challenge. I would point to the trial court's finding was an inference of potential bias. That's not a finding at all. Every juror is potentially biased. The trial court did not use the words actual bias nor implied bias. I don't believe the trial court even found intentional concealment. I think the trial court was they said the trial court said pretty good evidence he wasn't candid. And the trial court was going on an inaccurate recollection of what questions had been asked. I would also point to ER pages 936 and 941 where after an unreported sidebar the court questions juror number nine and then the prosecutor is basically making out a case for how the prosecutor would have exercised a peremptory challenge. I just think that to allow to to use an even less stringent burden of finding implied bias than was used in McDonnell for a civil litigant, I think that's just an an unreasonable application of Supreme Court precedent. Roberts. You're on reserve for rebuttal. Please. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent. McDonnell so-called bias is not implied bias. This Court has already held there are de novo three types of juror bias, actual, implied, and then so-called McDonnell bias. So they are not the same. Implied bias is when someone is conclusively found to be biased even though not actually biased. And McDonnell bias is when you conceal something that would have led to a challenge for cause. There are three different boxes, and it's does seem important not to try lumping McDonnell bias in the form of implied bias. The Supreme Court has not itself found implied bias is a constitutional theory. They haven't found that it is. They haven't found that it isn't. The case cited in the reply brief that U.S. v. Wood somehow establishes it, Wood is a case in which Congress categorically precluded government employees from serving on juries. And the Court recognized there is a theory of implied bias in common law, but they did not enshrine it as a constitutional matter. And they didn't need to reach that question because they found that it was irrational to conclusively conclude that government employees were biased. So it is — it remains correct, just as this Court has held and held in Bonk, that the Supreme Court has never itself recognized implied bias as a constitutional theory. Chris, the problem in this case is that you have the holdout juror. That's just not a problem. Well, let me finish. Sorry. Let me finish. It's — because none of this really arose until the other jurors said, we're having a problem with this juror, and then these other issues arose. So that's the element of coercion. Anytime a judge becomes aware that there's a holdout juror and there's a request by the other jurors to remove it, that's when the concern about coercion comes into play. So now you can start with what you were going to answer before. Well, you can't insulate yourself from being dismissed by blurting out that you are a holdout. To some degree, I think — I want to say that Williams v. Johnson, which is cited in our brief, and there doesn't appear to be any address of it from Petitioner, points out there was a citation to Brasfield, which I believe also Petitioner cited, and they explain, no, it's one thing if a court holds a hearing to try to figure out how are you And someone volunteers it, well, that just doesn't really complicate the picture at all. Well, it would in our circuit under Symington if we were dealing with strictly Federal law. I — No question about that. I mean, that would — we just had a case almost precisely like this one where we reversed a district court judge. So — but that's — I understand we're not dealing with Ninth Circuit law. We're dealing with Supreme Court law. But that's — I mean, that's the concern is that, on the record, was there — when the holdout juror was removed, was that coercive? I don't see how it can be coercive, the mere fact that he is a holdout juror. Either that is dispositively coercive or it's not, and the Supreme Court has never held that in. That was pretextual, for example. The cases we see on holdout jurors, it's usually when the jurors come in and they say, you know, we can't get along, this person isn't cooperating, the person is emotional, and so forth. And then we've said, you know, the trial judge has a higher duty in that circumstance to be careful once the judge becomes aware that there's a holdout juror. So I don't mean to argue with you on that. What I'm really eliciting from you is how you think that that theory doesn't come into play here. And if you disagree with my — with my statement, fine, but assume it hypothetically and tell me in this case why you don't think it plays out. Well, legally, I don't think it comes into play because the Supreme Court itself hasn't held that it comes into play. So while the Ninth Circuit is free to adopt that as a theory and find it preferable, which, again, Williams v. Johnson pointed out, it simply isn't the case. I think we're talking past each other. I'm not asking you to debate the theory with me. I'm just saying, I'm asking you to go through the — assuming that it applies in this case at all, I think you have an argument that, in fact, there was good cause to remove the juror, even though the juror had been identified as a holdout. So I'm trying to elicit from you your argument on why you think it was — the good cause was satisfied and that the California court of appeals decision was not that unreasonable determination of the facts. The — oh, and I should make clear that I'm not talking about the trial court's findings other than the finding that the concealment was intentional. As Williams v. Johnson pointed out, the last reasoned decision is that of the court of appeal. That's what I said. Yes. Not the superior court. So the superior — the court of appeal pointed out that after the initial concealment — and there was a flat initial concealment. It was simply no. Even after he amended that to include witnessing his parents, the Court asked, can you think of anything else in your background or training the attorneys might find of interest? And he says no. And they point out, well, before that, they had — the parties had repeatedly focused in on people. One who was attacked with an ice pick, weapon use. Someone fired a shotgun, weapon use. Shot while driving, weapon use. And when another juror said there was an armed robbery that occurred 35, 40 years ago, they specifically asked, any weapons involved? No. So there is a fair basis to infer that he understood weapons would be of interest, and he still didn't amend that. And the idea that he thought, well, that really wouldn't be important is sort of betrayed or belied by the fact that he brings it up in the jury room. So it isn't something that he didn't think was important. He had plenty of reason to think the attorneys would have thought it important, and he didn't amend it. So now returning to the theory, do you really think that it would be constitutional for a state trial judge to be informed that there was a holdout juror and based on that information alone to remove that juror from the jury? Because I think I — I thought I heard you say that, and I just want to make sure I understand. No, my point was that adding the fact that someone is a holdout juror cannot tip the scale in terms of keeping him on. Right. But I want to make sure I understand your position. You're not really saying that if the only issue is removal of a holdout juror absent anything else, that that would be constitutional for a judge to remove the holdout juror. I'm not aware of any Supreme Court case saying that it is. And it's hard — and I'm — it's — I'm not — You're holding out. You're off the jury. And that's it. That's constitutional? Well, Your Honor, it's a bit odd to ask me to opine on something that simply isn't our fact at all. And in this hypothetical — Hypotheticals happen in a moral argument. I understand. But — I just want to understand your position on this. Well, my position really is AEDPA governed rather than facing the hypothetical that just has no arguable application to this play, this case. So I certainly wouldn't want that if I were a defendant, I suppose, assuming the juror was going my way. But it's hard for me to go beyond what's clearly established here. Maybe you just — I don't know. I can't believe that you're answering the question in the manner in which you answered it. Chief Judge Thomas was not asking you, you know, is it wrong — let's say we have a jury of 12 in a criminal case, and we have a situation where somebody just refuses to deliberate, okay? They just won't deliberate. They won't talk to their other fellow jurors. There's precedent for removing somebody under those circumstances. There's no question about that. They just refuse to do their job as a juror. What the chief judge asked you was if you have a jury of 12, and they've been deliberating, and there's a person that's a holdout, and the judge just wants to get a verdict, doesn't want to retry the case, and the judge just says, well, this is a holdout, I'm going to remove that holdout, you're not suggesting that that's okay, are you? I am certainly saying that there is nothing clearly establishing that is unconstitutional, especially given that the Supreme Court has not held there is a unanimous right to a jury verdict in State court. So for me to volunteer beyond that, they have not held that there's a right to a unanimous jury verdict. That has been the principle on saying you can't hold — you can't remove a holdout juror. There is no such right constitutionally established for — in State court. So for me to say that a theory that is based on unanimity somehow holds when there is no right to unanimity, I can't give you that. Okay. Roberts. Thank you, counsel. Thank you, Your Honor. Please. Removing a holdout juror is equally or more coercive than saying something, whether instruction or non-instruction comment, that would cause the juror to surrender his or her views. That's coercion. But there isn't any, counsel, there really isn't anything in the record here that would suggest that the judge just removed the juror without any basis at all, principally and only because they were a holdout juror. What you have is a basis. Now, I know you believe it's pretextual. Okay. I understand that. But you do have the judge and the court of appeal agreeing with the judge that there was a reasonable basis to remove this person because they had made a material omission. Okay. And a material omission can be as bad as an outright falsehood. And that was the problem. So we don't have a situation where we have simply a circumstance where the judge looked and said, oh, my goodness, you know, this person is keeping us from getting a verdict. I'm going to figure out a way to get rid of them. I don't see that in the record. That's true. I understand what you're saying. Once it becomes known, as it did in this case, that this juror was holding out for acquittal and also the manner in which it came up, it was clear that this issue came up from the deliberative process itself. Both of the other jurors that the judge spoke to were complaining that they weren't going to be able to reach a verdict that day, which was only the second day of deliberations, by the way, that juror number nine kept changing his mind. So I think once it came to the court's attention in this manner, since we know that the Supreme Court has told us there can be no judicial coercion, the trial court has to exercise particular care in any action that's going to be taken. And removal of a holdout juror is coercive. That principle is so clear that it doesn't matter that the Supreme Court has not articulated it in this exact context. Let me ask you this. If the judge had done something different than what the judge did in these circumstances and said, well, this juror answered this question imperfectly, and they're having all this trouble with him, I'm going to declare a mistrial. Would your client be here saying there's double jeopardy? Well. You'd be arguing the opposite. I think. Do you see? Do you see what I'm saying? I think if the trial judge had declared a mistrial right then, yes, I think I would be here arguing double jeopardy if I could. And perhaps eventually a mistrial would not have been a situation. But so, no, I think he needed to send them back in to deliberate further at that point. Okay. Very good. Thank you, counsel. Thank you. The case just argued will be submitted for decision. And we'll proceed to argument in the case of California v. Pikian-Rancheria.
judges: Fernandez, Thomas, Ezra